# Staunton.

## CLINCHFIELD COAL CO. v. WHEELER.

September 15, 1910.

Absent, Cardwell, J.

1. APPEAL AND ERROR—*Maturing Case—Sufficiency of Bond.*—There is no error to the prejudice of the defendant in error in this case in the proceedings by which this writ of error has been matured for hearing, nor is the bond taken open to the objections alleged against it.

2. MASTER AND SERVANT—*Assumption of Risk.*—A servant, when he enters the service of the master, assumes all of the ordinary risks of such service, and also, as a general rule, all risks from causes which are known to him, or should be readily discernable by a person of his age and capacity, in the exercise of ordinary care.

3. MASTER AND SERVANT—*Obvious Dangers—Assumption of Risk.*— When an employee is not placed by his employer in a position of undisclosed danger, but is a mature man, doing the ordinary work which he has engaged to do and the risks of which are obvious to any one, he assumes the risk of the employment, and no negligence can be imputed to the employer for an accident to him therefrom.

4. INSTRUCTIONS—*Evidence to Support—Assumed Risk.*—An instruction which correctly states the law of "assumed risk" and is applicable to the case, should be given where the evidence tends to establish the facts stated therein.

Error to a judgment of the Circuit Court of Russell county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

There was a motion by the defendant in error to dismiss the writ of error awarded in this case, and the following grounds were assigned:

The judgment of the lower court was rendered May 24, 1909. Petition and transcript was received by a judge of this court November 11, 1909, and received by the clerk at Wytheville, November 16, 1909, the bond being fixed at $13,000.00. On November 26th, a writ of error and supersedeas was issued by the clerk. No effort was made to mature this writ. On February 9, 1910, a second writ was issued, and by certificate dated March 15, 1910, endorsed on this writ by the clerk of the lower court, it appears that a bond was executed, and this writ was tendered to counsel for defendant in error for acceptance of service, and this acceptance was endorsed on the writ and returned to the clerk of this court.

Under date of April 9, 1910, counsel for plaintiff in error notified counsel for defendent in error that "anticipating" some "question" would be made about this bond, it had been decided to issue a "new summons" and to execute a "second bond." In the mean time the record had been printed and sent out as early as January 20, 1910, before any writ had been executed.

On April 20, 1910, the clerk issued the "new summons" upon which the clerk of the lower court makes his certificate of the "second bond" and on April 23, 1910, this writ was presented to defendant in error's counsel for acceptance of service, and acceptance endorsed thereon, but without prejudice, and the case is now upon this docket upon this third and last writ.

It appears from this writ that the surety on the bond is the National Surety Company and that it executed it by its agent and attorney in fact. We exhibit a certified copy of the bond and power of attorney, and from these it appears that the surety is a foreign corporation.

Defendant in error now appears upon the first day of the first term of this court after the execution of this bond (the earliest moment such a motion could have been made), upon notice, and moves the court to dismiss this writ of error and supersedeas upon the following grounds, to-wit: As this motion is based on facts appearing from the face of the record (the writ, bond and power of attorney, each of which is a part of the "proceedings of the cause," without which it *could not proceed*), we think no notice necessary. Rule 1. 106 Va.; 2 Bar. L. Pr. 1318, 1319.

First: The clerk had no authority to issue the writ of April 20, 1910, without an order of this court, the writ of February 9, 1910, then being returned duly executed and in his office. Code §3221; 32 Cyc. 444, 446, and cases cited. *Gorman* v. *Steed*, 1 W. Va. 1, 5, construing this same statute, and holding that where a previous writ is returned executed the clerk has "no authority" to issue a subsequent one. The same rule is laid down in 20 Ency. Pl. & Pr., 1178 et seq.

Second: The bond on its face is irregular and substantially defective. It is not such a bond as the statute says that defendant in error shall have, and he has not waived his right to have just such a bond as the statute provides. The bond given in this case is a conglomeration of recitals, and is just as much like an official bond given by a person qualifying to fill some "office, post or trust," as it is like a supersedeas bond; true it has some recitals inconsistent with a bond to fill some office, but it also has some equally inconsistent with its being a supersedeas bond. It leaves out one of the conditions expressly required by the statute (to pay "all actual damages," etc.), and puts in a waiver of the right to pay with coupons. Whether the obligors are natural persons, partnerships or corporations, is not disclosed in terms, but the recitals binding their "heirs, executors and administrators" and waiving the homestead, and providing for the liability which may arise

out of the "office, post or trust," would clearly show them to be natural persons, according to all the nomenclature of the law. The provision to pay "all actual damages," etc., was expressly added to the statute by the revisors of 1887, because (as Judge Burks says, 2 Bar. L. Pr. 1403), the construction given by this court in *Cardwell* v. *Allen*, 28 Grat. 184, was too "restricted."

Third: The clerk of Russell county had no authority to accept the National Surety Company (a foreign corporation) as surety. "*The surety* (on a supersedeas bond) *should be a resident of the State*" (2 Bar. L. Pr. 1317; 2 Bar. Chy. Pr. 1252; 2 Cyc. 831), for obvious reasons. Therefore, the National Surety Company (a non-resident, foreign corporation), could only be accepted under the provisions of chap. VIII of an act passed in 1906 (p. 165-172), as amended by Acts of 1908 (p. 346-354). Under the provisions of these acts a foreign corporation must qualify to do business in this State through the Bureau of Insurance, and must go to the clerk accredited by the Commissioner of Insurance, and the clerk is wholly without authority to accept any such company as surety not thus accredited in the manner provided for by the statute. In this case there does not seem to have been any pretense at complying with the various provisions, either by the National Surety Company, the Commissioner of Insurance or the clerk; but they, and each of them, have simply substituted a procedure which appeared to them a good enough substitute for the will of the legislature.

The power of attorney under which the bond in this case was executed was never filed with or recorded in the office of the Commissioner of Insurance, and he has never so much as seen it.

The power is not "*duly acknowledged*" for recordation anywhere.

In conclusion: By section 3474 of the Code it is provided

that the "appeal, writ of error, or supersedeas *shall be dismissed* whenever it appears that one year * * * has elapsed since the date (of the judgment) * * * before such bond is given as is required to be given before an appeal, writ of error, or supersedeas takes effect," as required by section 3470. The authorities show that the defects in a bond cannot be cured by executing a new bond *after the expiration of time fixed by the statute.*

To the rule made on the motion to dismiss, the following answer was filed:

For cause against the motion to dismiss the writ of error, Clinchfield Coal Company says, it is advised, avers, and insists that:

1. The defendant in error has been properly summoned.

2. The summons issued February 9, 1910, with the endorsement thereon, was accepted by defendant in error and duly returned.

3. The summons of April 20th is in due form; service was accepted subject to exceptions, and it was returned. If the first writ was void, the second was good.

4. Writs of error are not dismissed for defects in summons, but for failure to give bond within the time specified in section 3474 Code.

5. The bond complained of is not open to the objections stated in the motion to dismiss.

6. The power of attorney was duly executed by the National Surety Company; the certificate of acknowledgment is sufficient, and was attached to the power of attorney when received from the company by the attorneys for plaintiff in error, and by the attorneys in fact, from such attorneys at law, and when delivered by them to the clerk.

The attorney for defendant in error has agreed to admit that the papers were attached as here stated.

7. A copy of the power of attorney was filed by the National

Surety Company in the office of the Commissioner of Insurance on the 28th day of April, 1910; the Commissioner notified the clerk of the circuit court by letter dated April 29, 1910, and the said clerk had been notified that the National Surety Company was licensed to transact business in Virginia, as will appear from two certificates of the Commissioner of Insurance and exhibits therewith, which are filed herewith.

8. If there is surplusage in the bond of April 6th, it does not vitiate the bond.

See *Yost* v. *Ramey*, 103 Va. 117, 48 S. E. 862.

9. The omission of "all actual damages" does not vitiate the bond, because the covenants it contains cover everything the defendant in error can possibly become entitled to recover. The exact question involved has been decided in *V. F. & M. I. Co.* v. *N. Y., etc., Co.*, 95 Va. 515, 28 S. E. 888.

10. If it could possibly be held that the bond is insufficient, that does not make it void. A bond has been given in good faith; the defendant in error was *actually* notified of it April 9th; he had thoroughly examined the bond and learned the errors he now alleges sometimes before May 16th, see Clerk Fletcher's certificate and 4th line, last paragraph p. 8, of motion to dismiss: there were, after May 16th, twelve days in which he could have notified plaintiff in error and asked for a new bond, but he waited until the day the right to give a new bond expired, and then mailed a notice to plaintiff in error's attorney, which could not reach him until Sunday morning, the 29th, that he would move to dismiss.

*Acker* v. *A. & F. R. Co.*, 84 Va. on p. 650, 5 S. E. 688; *Va. F. & M. I. Co.* v. *N. Y., etc., Co.*, 95 Va. p. 516, 28 S. E. 888.

11. That respondent did not deliberately delay maturing the case, the record and defendant in error's printed motion show.

12. The bond is binding on the Surety Company under sec-

tion 2 of chapter VIII, Acts 1906, p. 166, whether the company had complied with the requirement of the acts or not.

13. Section 16. p. 169, relates to the duties of the Commissioner, and not of the company. His failure, if there was one, was in a ministerial duty, and could not deprive the company or a litigant of its rights. There was none.

14. The description of the power of attorney in the certificate identifies the power, if they had not been fastened together.

See *Burgess* v. *Commonwealth*, 2 Va. Cases, 487.

15. Section 26, as amended, Acts 1908, p. 354, does not require the filing or recordation of the power of attorney or of the certificate of acknowledgment; it requires the filing and recordation of a copy of the power of attorney, which was done. In no case is the time for recordation limited; the general agent is forbidden to execute the bond until five days after the power is *filed*, not recorded, and that provision does not apply to a special power.

The requisite copy was filed, the bond is binding on the company, and there is no suggestion of a way by which it can avoid liability on it.

16. No exception has been taken to the first bond or the summons issued, accepted and returned thereunder. If they are good, the others are surplusage.

*Phlegar & Powell* and *C. C. Burns*, for the plaintiff in error.

*Wm. H. Werth*, for the defendant in error.

Harrison, J., delivered the opinion of the court.

There is no error to the prejudice of the defendant in error in the proceedings by which this writ of error has been matured for hearing, nor is the bond taken open to the objections

urged against it.   The motion to dismiss is, therefore, over-ruled.

This is the second appearance of this case upon our docket. Upon the former hearing, the judgment of the circuit court was reversed, the verdict of the jury set aside and the case remanded for a new trial, if the plaintiff should be so advised; the court expressing the opinion that under the facts established by the record no verdict could be rightfully found for the plaintiff, under any instructions. *Clinchfield Coal Co.* v. *Wheeler*, 108 Va. 448, 62 S. E. 269.

The salient facts of the case are fully stated in the former opinion and need not be repeated here.   On the part of the plaintiff the only additional evidence presented by the present record consists of innumerable figures and calculations relating to the mechanical efficiency of the motor, and the opinions of a number of witnesses, that it was not reasonably safe to operate a motor on a ten *per cent.* grade.   In the view we take of the case it is not necessary to recite or comment in detail upon this new evidence.   Taken as a whole it has little or no bearing upon the crucial question upon which this case must turn if rightly decided.   Much of it is incompetent, being the mere opinions of witnesses who are shown to be without sufficient knowledge or experience to express an opinion on the subject as to which they undertake to speak, and most if not all of it is misleading and calculated to divert the attention of the jury from the real issue to be determined by them.

The record shows that all grades and machinery used in coal mining operations are more or less dangerous, and that the degree of safety secured in doing such work is measured largely by the care and skill exercised by the operator in performing the duties undertaken by him.

In the case at bar it is as true now as it was on the former hearing that every fact which it is claimed contributed to the

accident was as fully known to the deceased as it was to the defendant. He was a man of intelligence and considerable experience in such work, and he knew that he was undertak-ing to operate a traction motor on a ten *per cent.* grade. The uncontradicted evidence shows that he was fully instructed in this particular operation by a highly competent and ex-perienced expert, under whose immediate surpervision he ran the motor time and again up and down the road; that under this instructor he stopped the motor and started it, applied and released the brakes, and tested its operation generally; and that when his attention was especially called to the grade, he said he had not run on a ten *per cent.* grade, but had run on one nearly as heavy. He was cautioned to make repeated examinations of the motor, and to report anything that might be wrong.

A servant, when he enters the service of the master, as-sumes all the ordinary risks of such service, and also as a general rule assumes all risks from causes which are known to him, or should be readily discernible by a person of his age or capacity, in the exercise of ordinary care. When the employee is not placed by his employer in a position of undis-closed danger, but is a mature man, doing the ordinary work which he has engaged to do and whose risks are obvious to anyone, he assumes the risk of the employment, and no negli-gence can be imputed to the employer for an accident to him therefrom. *Clinchfield Coal Co.* v. *Wheeler, supra,* and au-thorities there cited.

It is clear from the record before us that whatever danger may have attended the use of the traction motor and the opera-tion generally in which the deceased was engaged was a risk assumed by him with full knowledge of all the facts.

The refusal of the circuit court to give the following in-struction asked for by the defendant is assigned as error: "If the jury believe from the evidence that Jack Wheeler knew the railroad track, its grades, curves, and its length and con-

dition; that he represented to the defendant or its representa-tive, that he understood and could run the motor on that track; that he was a man of sufficient intelligence to know that the steeper the grade the faster a motor and train would run down it, and the harder it would be to hold them, and that he knew what load he was attempting to haul down the grade, he assumed the risk, and the jury must find for the defendant."

This instruction announced the well settled doctrine of assumed risk, it was applicable to the case, and should have been given. The evidence tended strongly to establish every fact stated in the instruction, and if those facts were proven to the satisfaction of the jury the conclusion of the instruc-tion, that the deceased assumed the risk and the jury should find for the defendant, was inevitable.

The judgment must be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed.*